UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HAEMONETICS CORP.,                        :   *LEAVE TO FILE GRANTED 1/26/11*

         Plaintiff,                      :   Civil Action Nos.
   v.                                              05-12572-NMG
                                          :   09-12107-NMG
FENWAL, INC.,
                                          :
         Defendant.
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FENWAL, INC.'S REPLY MEMORANDUM IN
<u>SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

ARGUMENT .......................................................................................................................2

I. THE "PLURALITY OF TUBES" CANNOT BE THE CONDUITS MOLDED INTO THE VESSEL ...............................................................................................2

II. THE ALYX SYSTEM CENTRIFUGAL UNITS DO NOT INFRINGE CLAIM 16 .......7

III. EVEN UNDER HAEMONETICS' NEW, MISGUIDED ARGUMENT, PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT WITH RESPECT TO THE REDESIGNED ALYX SYSTEM VESSELS WOULD BE APPROPRIATE ..................8

CONCLUSION ..................................................................................................................14

# TABLE OF AUTHORITIES

Page

**CASES**

*Abbott Labs. v. Sandoz, Inc.*,
566 F.3d 1282 (Fed. Cir. 2009) (en banc), *cert. denied sub nom. Astellas Pharma, Inc. v. Lupin, Ltd.*, 130 S. Ct. 1052 (2010) .................................................................. 10

*ACLARA Biosciences, Inc. v. Caliper Techs. Corp.*,
125 F. Supp. 2d 391 (N.D. Cal. 2000) ............................................................................. 12

*Amesbury Group, Inc. v. Caldwell Mfg. Co.*,
No. 05-10020-DPW, 2006 U.S. Dist. LEXIS 80286 (D. Mass. Nov. 2, 2006) ................. 12

*Amstar Corp. v. Envirotech Corp.*,
730 F.2d 1476, 1480 (Fed. Cir. 1984) ............................................................................... 9

*Eli Lilly & Co. v. Teva Pharms. USA, Inc.*,
619 F.3d 1329 (Fed. Cir. 2010) ......................................................................................... 5

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*,
287 F.3d 1108 (Fed. Cir. 2002) ......................................................................................... 9

*Freedman Seating Co. v. Am. Seating Co.*,
420 F.3d 1350 (Fed. Cir. 2005) ......................................................................................... 9

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
607 F.3d 776 (Fed. Cir. 2010) ....................................................................................... 3, 4

*Insituform Techs., Inc. v. CAT Contracting, Inc.*,
385 F.3d 1360 (Fed. Cir. 2004) ....................................................................................... 12

*JVW Enterprises, Inc. v. Interact Accessories, Inc.*,
424 F.3d 1324, 1333 (Fed. Cir. 2005) ............................................................................... 9

*Pall Corp. v. Micron Separations, Inc.*,
66 F.3d 1211 (Fed. Cir. 1995) ......................................................................................... 13

*Vulcan Engineering Co. v. Fata Aluminum, Inc.*,
278 F.3d 1366, 1375-76 (Fed. Cir. 2002) ......................................................................... 9

# **TABLE OF AUTHORITIES**
### (cont'd)

**Page**

**CASES**

*Warner Mfg. Co. v. Armstrong*,
   No. 05-CV-0612, 2007 U.S. Dist. LEXIS 86886 (D. Minn. Nov. 15, 2007) ......................... 12

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997) ................................................................................................................. 10, 13

**STATUTES**

35 U.S.C. § 112, ¶ 1 ....................................................................................................................... 5, 13

**OTHER AUTHORITIES**

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
   No. 2009-1557, at 24:25-24:45 (Fed. Cir. Apr. 5, 2010), available at
   http://oralarguments.cafc.uscourts.gov/mp3/2009-1557.mp3 .................................................. 6

**INTRODUCTION**

The Court has already considered and rejected what Haemonetics is trying to sell in its baseless opposition to Fenwal's Motion for Summary Judgment. Early in the 2005 action, the parties agreed, and this Court accepted, that the meaning of "plurality of tubes" in claim 16 of the '983 patent was "two or more conduits that transport liquid materials (e.g. blood and blood components) into and out of the vessel." (*See* SOF ¶ 34.)[1] More importantly, all involved in these proceedings—Haemonetics, Fenwal, the Court, and the Federal Circuit—proceeded under that understanding, and further understood that, in the accused Fenwal devices, "both parties consistently identified the 'plurality of tubes' as the umbilicus." (*Id.*)

Now, Haemonetics portrays itself as faced with a "dilemma" (Opp. at 1),[2] a dilemma which led it to "reexamin[e] the ALYX Cups" and "determin[e] that the ALYX Cups in fact contain a *plurality of tubes* in addition to the umbilicus"—in particular, "a set of tubes which are molded into the vessel." (*Id.* at 2, emphasis in original). Haemonetics further claims that its "reexamin[ation]" is true to the above construction of "plurality of tubes." (*Id.*)

This is more of the same "pure sophistry" earlier identified by this Court (SOF ¶ 34), just decorated for the season in new wrapping paper. The only "dilemma" Haemonetics has is a steadfast unwillingness to cease its unfounded campaign of harassment against Fenwal, or its business strategy of sowing and maintaining uncertainty in the blood-collection marketplace. The position now asserted by Haemonetics is inconsistent with and unsupported by the '983 patent, this Court's construction of "plurality of tubes," its own prior positions, and, perhaps most importantly, the Federal Circuit's stated understanding.

---

[1] References to "SOF" are to Fenwal, Inc.'s Local Rule 56.1 Statement in Support of its Motion for Summary Judgment (2009 D.I. 68).

[2] References to "Opp." are to Plaintiff Haemonetics Corp.'s Opposition to Defendant Fenwal, Inc.'s Motion for Summary Judgment (2009 D.I. 70).

Based on the record, this Court should grant summary judgment to Fenwal because Haemonetics is estopped from claiming any structure other than the umbilicus as the "plurality of tubes" and given the proper and agreed-upon construction of the language of the '983 patent, as well as its prosecution history, the claimed "plurality of tubes" cannot be what Haemonetics now asserts.

## ARGUMENT

### I. THE "PLURALITY OF TUBES" CANNOT BE THE CONDUITS MOLDED INTO THE VESSEL

Haemonetics now asserts that the "plurality of tubes" are structures that are integrally molded into the vessel. (Opp. at 2,6; SOF ¶ 32.) This new position is legally incorrect and barred by every appreciable doctrine of preclusion.

*First*, passages that are part of the integrally molded vessel cannot, by definition, be "[c]onduits that transport liquid materials (e.g., blood and blood components) into and out of the vessel." Passages that are entirely contained within the vessel, as is the case with what Haemonetics now claims to be the "plurality of tubes," can only transport blood "*within* the vessel," not "into and out of the vessel." Only a separate structure, distinct from and external to the molded vessel, could transport liquids "into and out of" that vessel. Thus, Haemonetics' new theory fails as a matter of law under the parties' agreed-to claim construction.

*Second*, this Court and the Federal Circuit have both recognized that the language of claim 16 as a whole confirms that two distinct structures—"a centrifugal component" and a "plurality of tubes displaying a single tubular component" external from that component—are required by that claim. If, as Haemonetics suggests, the "plurality of tubes" could be part of a singular "centrifugal component," then this claim language, which requires a vessel *and* a plurality of tubes, would be rendered a cipher. Consistent with the claim language, the Federal

Circuit's opinion itself observed that claim 16 "unambiguously defines 'centrifugal unit' as 'comprising' *two structural components*: a centrifugal component and a plurality of tubes." *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 781 (Fed. Cir. 2010); (SOF ¶ 27).[3] Thus, the Federal Circuit agreed that the "vessel" and "plurality of tubes" are separate components. In its opinion reversing the Court's claim construction of "centrifugal unit" and holding that "centrifugal unit" means "a vessel and a plurality of tubes," the Federal Circuit did not allow for the possibility that "centrifugal unit" could mean "a vessel *having* a plurality of tubes," but rather repeatedly looked to the umbilicus as comprising the separate structure of a "plurality of tubes," external to the vessel. (SOF ¶¶ 21 and 25-28.)

This Court, too, has recognized that the "vessel" and the "plurality of tubes" are separate components. In its October 13, 2010 Order, the Court stated: "The device consists of two parts: a vessel in which the blood separation takes place ('the Vessel') and tubing which carries blood in and out of the vessel ('the Tubes')." (SOAF ¶ 10.)[4]

The prosecution history of the '983 patent confirms what both the Federal Circuit and this Court have already held—that the "plurality of tubes" is a distinct element from the vessel. Claim 15 of the PCT application, the application from which the '983 patent originated, separately identified the tubing as an element distinct from and external to the vessel, with reference numeral (9). (SOAF ¶¶ 1-2.) Haemonetics made precisely this point in the earlier *Markman* proceedings when arguing that the centrifugal unit of claim 16 should be construed to mean the vessel alone: "Indeed, the claim itself identified the 'centrifugal unit' of the preamble

---

[3] Emphasis is added throughout unless otherwise indicated.

[4] References to "SOAF" are to Fenwal, Inc.'s (1) Response to Haemonetics Corp.'s Statement Of Additional Material Facts And (2) Fenwal, Inc.'s Statement of Further Material Facts In Support Of Its Motion For Summary Judgment, filed herewith.

with the reference numeral (2), and *separately identified the tubing as a distinct element*, with reference numeral (9)." (SOAF ¶ 4.)

*Third*, nowhere—nowhere—in the '983 patent is there any support for the position Haemonetics now articulates. At every turn, the patent describes the vessel (whether it is called a "centrifugal unit," as in claims 1-15 and 21-30, or a "centrifugal component," as in claims 16-19) and the "plurality of tubes" as separate structures that are external to the vessel. The "Background of the Invention" section of the '983 patent describes "connecting a rotating unit [*i.e.*, the vessel] with a flexible tube or cord." ('983 patent, col. 1, lines 18-19.) The portion of the "Summary of the Invention" that describes the embodiment of claims 16-19, (*id.* at col. 3, lines 20-35), similarly describes a distinct "plurality of tubes" and a vessel (*i.e.*, "centrifugal component") where the interface between each tube and the separation chamber "provid[es] communication" between those two distinct structures. (*Id.* at col. 3, lines 30-35.) Moreover, the drawings and written description of the '983 patent denote the internal passages not as "tubes" but as "channels" **4, 5,** and **6,** which are "connected to three tubes **4a**, **5a**, and **6a** respectively (FIG. **4**)" where tubes **4a**, **5a**, and **6a** are included in flexible tubular component **9**. (*Id.* at col. 4, lines 54-57.) The patent thus shows that the "tubes" are, and must be, separate structures that are external to the vessel.

As the Federal Circuit described it, using "(1)" and "(2)" to delineate the separate structures:

> The '983 patent describes a centrifugal device comprising (1) a vessel in which blood components are separated in a separation chamber and (2) tubing through which blood flows in and out of the vessel. The tubing connects the spinning vessel to a non-rotating support structure, forming a question mark-shaped loop around the vessel.

*Haemonetics*, 607 F.3d at 778 (SOF ¶ 25). The "tubing" could not "connec[t] the spinning vessel to a non-rotating support structure," of course, if the "tubing" were integral to the vessel.

-4-

Without any support in the specification, such a reading of the claims would fail the written description requirement of patent law, 35 U.S.C. § 112, ¶ 1. *Eli Lilly & Co. v. Teva Pharms. USA, Inc.*, 619 F.3d 1329, 1345 (Fed. Cir. 2010) ("As this court recently confirmed, the test for written description is whether the disclosure of the application . . . reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.") (internal quotation marks and citations omitted).

Haemonetics has offered a new declaration from Dr. G. Albert Russell (Opp. at 18), which purports to support Haemonetics' new infringement theory, but Dr. Russell has identified no disclosure whatsoever in the '983 patent to support his conclusion that the "plurality of tubes" can be molded structures within the vessel. Every time the '983 patent describes the "plurality of tubes," it is with respect to the tubular component 9 and the three tubes 4a, 5a, and 6a within the tubular component 9, and not to a vessel having integrally molded "tubes." Additionally, the tubes are regularly referred to in the '983 patent as "flexible tubes," which is inconsistent with any notion that the "plurality of tubes" can be an internal part of the rigid plastic vessel. Indeed, in the *Markman* proceedings, Haemonetics' own counsel argued: "There is nowhere in the entire specification, nowhere in the prosecution history, in which the centrifugal unit is referred to as a combination of the centrifugal cup or bowl and the tubes. Nowhere." (SOAF ¶ 5.)[5] Now, of course, Haemonetics inconsistently seeks to have the centrifugal unit be the "cup or bowl" with the "plurality of tubes" combined within.

*Fourth*, Haemonetics' new arguments demonstrate how indefinite this patent claim truly is. At oral argument before the Federal Circuit, Judge Lourie asked Haemonetics' counsel,

---

[5] On appeal, Haemonetics similarly argued: "Nowhere does the Specification suggest, either explicitly or implicitly, that the *height and radius* may include the length of the tubing associated with the vessel." (SOAF ¶ 6) (emphasis in original) . Now, of course, Haemonetics claims that the height and radius *must include* the length of the tubing associated with the vessel, because the new "tubing" is supposedly integral to the vessel.

"Why don't we throw this patent out if it's so difficult to construe?" Oral Argument, *Haemonetics Corp. v. Baxter Healthcare Corp.*, No. 2009-1557, at 24:25-24:45 (Fed. Cir. Apr. 5, 2010), available at http://oralarguments.cafc.uscourts.gov/mp3/2009-1557.mp3 (SOAF ¶ 7). Haemonetics' counsel offered no answer to that question then, nor has Haemonetics answered that question now. To the contrary, Haemonetics has seized on its own "inartful patent drafting" (SOAF ¶¶ 2, 5) as an excuse for putting forth a ***completely new infringement theory***, which cannot in any way be reconciled with its prior arguments and positions, or with the '983 patent itself.

But, as this Court recognized in its October 13, 2010 Order, Haemonetics is judicially estopped from making these arguments. (SOF ¶ 34.) Rather than burdening this reply brief with extensive re-argument demonstrating why Haemonetics is judicially estopped, Fenwal refers the Court to Fenwal, Inc.'s Opposition To Haemonetics Corporation's Motion For Status Conference (2009 D.I. 61), which sets out the law and application of judicial estoppel in detail, as well as this Court's Order, which held that Haemonetics is judicially estopped "from now asserting a different construction of "plurality of tubes." (SOF ¶ 34.)

Haemonetics nonetheless claims that it is now free to assert that "other structures in the infringing [*sic*] ALYX device are also a plurality of tubes."[6] (Opp. at 2 n.1.) This is more

---

[6] As detailed in Section IV of Fenwal's sur-reply in opposition to Haemonetics' Motion For Status Conference (2009 D.I. 64, Exhibit A), Haemonetics recently filed a Writ of Complaint in Germany alleging that the ALYX System separation cups infringe the German part of the European patent that is related to the '983 patent (claim 1 of the German patent is similar to claim 16 of the '983 patent). (SOAF ¶¶ 8-9.) Tellingly, in the Writ, Haemonetics represents to the German court that the claimed "plurality of conduits," which correspond to the "plurality of tubes" in claim 16, are the tubes within the umbilicus—just as Haemonetics has maintained throughout these proceedings prior to the filing of its new infringement contentions. (*See id.*) This is consistent with the drawings and written description of the '983 patent, which denote the internal passages as "channels" **4, 5,** and **6,** which are "connected to three tubes **4***a*, **5***a*, and **6***a* respectively (FIG. **4**)" where tubes **4***a*, **5***a*, and **6***a* are included in flexible tubular component **9**. (*Id.* at col. 4, lines 54-57.) In the Writ, Haemonetics also consistently identifies elements 4, 5, and 6 as "channels" in the vessel and separately identifies elements 4a, 5a, and 6a as "conduits" in the umbilicus—"In the embodiment example, the channel (4) constitutes the channel for the supply of the blood to be centrifuged . . . . Channels (5) and (6) serve to separate components with different density and to transport these in

"sophistry." Haemonetics' Opposition pays no respect whatsoever to this Court's statement, in that October 13 Order, that "the parties consistently identified the 'plurality of tubes' as the umbilicus" (SOF ¶ 34), nor to this Court's holding on judicial estoppel.[7] And, as detailed above, that theory—whether viewed as a new claim-construction theory or as a never-before-thought-of factual theory—is legally unsound in view of the patent's claims and specification, which stand in the way of that theory.

\* \* \* \*

The Court should see Haemonetics' "new" argument for what it is. Having successfully urged this Court that the only thing that mattered for purposes of measuring the height and radius of the "centrifugal unit" was the vessel itself, and having had the Federal Circuit tell it that, no, the "centrifugal unit" includes two components, the vessel *and* the associated tubing, Haemonetics has come up with a theory under which—again—only the dimensions of the vessel count for purposes of the critical measurements required by claim 16. The dictionary defines "sophistry" as "subtly deceptive reasoning and argumentation." There is no better example of this than what Haemonetics has given to the Court in its last several filings.

## II. THE ALYX SYSTEM CENTRIFUGAL UNITS DO NOT INFRINGE CLAIM 16

The claimed "plurality of tubes" must therefore be the ALYX System's umbilicus, as already recognized by this Court in its October 13 Order and the Federal Circuit in its opinion.

---

(continued…)

separated form back to conduits (5a, 6a) connected in the center of the vessel . . . These channels also open up in the middle of the centrifuging vessel into the holder 10 and there into the conduits (5a and 6a) that are accommodated in the flexible tubular element (9) . . . ." (SOAF ¶ 9). Haemonetics' position in the German action—not to mention the '983 patent itself—flatly contradicts its new position in these proceedings that the "plurality of tubes" can be the integrally molded components of the vessel.

[7] Haemonetics also ignores the Federal Circuit's repeated acknowledgement of the claimed "plurality of tubes" as the question-mark-shaped tubing around the vessel. (*See* Fenwal, Inc.'s Memorandum in Support Of Its Motion For Summary Judgment at 8-9 (2009 D.I. 67) (hereinafter, "Mem.").

Thus, for the reasons set forth in Fenwal, Inc.'s Memorandum in Support of Its Motion for Summary Judgment (2009 D.I. 67), the ALYX System centrifugal units do not infringe claim 16 of the '983 patent because the inclusion of the umbilicus takes the accused devices far afield from the limited height and radius dimensions recited in claim 16. Haemonetics does not dispute that, when the umbilicus is included in the radius and height dimensions, summary judgment is appropriate. (*See* Opp. at 9) ("The fact that the ALYX Cups have more than one plurality of tubes, *one of which may now evade infringement (umbilicus)* and one which does not (Centrifugal Tubes), does not make them any less infringing.") (emphasis altered).

### III.   EVEN UNDER HAEMONETICS' NEW, MISGUIDED ARGUMENT, PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT WITH RESPECT TO THE REDESIGNED ALYX SYSTEM VESSELS WOULD BE APPROPRIATE

As shown above, Haemonetics' opposition to Fenwal's motion for summary judgment is not just meritless, but frivolous, because it contradicts the '983 patent, the Federal Circuit's ruling, this Court's prior rulings, Haemonetics' own prior assertions, and common sense. Fenwal's motion for summary judgment in both actions should be granted in full.

However, to be careful and complete, Fenwal adds this Section III in order to demonstrate to the Court that even Haemonetics' newly minted sophistry would not prevent summary judgment with respect to the redesigned ALYX System vessels.

The relevant facts demonstrate that *the vessel itself*—even without the external tubing—falls outside the dimensions of claim 16. Those facts are agreed-to by the parties: Fenwal increased the external height of the redesigned ALYX System vessels by 9.5 mm, from 55 mm to 64.5 mm. (Opp. at 11; SOAF ¶¶ 11-12.) The ratio of the height to the radius of the redesigned ALYX System vessels is 131.6%. (*See* Opp. 15; SOAF ¶¶ 11-12) Therefore, there is no dispute that the ratio is outside the 75 to 125% range literally recited in claim 16.

Haemonetics claims two *factual* issues with respect to infringement by the redesigned

ALYX System vessels: (1) that the increased height of 9.5 mm of the redesigned ALYX System vessels should not be included in the height measurement for purposes of determining literal infringement, and (2) that the redesigned ALYX System vessels are equivalent to the original ALYX System vessels. (Opp. at 11-12.) These are not factual disputes at all, because both arguments fail *on legal grounds*.

**Literal Infringement.** Haemonetics argues (Opp. at 11) that the additional height added to the redesigned vessels should not be counted when ascertaining the question of literal infringement. This is not a factual argument, but a legal one, and that legal argument relies upon a misapplication of basic patent-law principles, which provide no basis for arbitrarily excluding part of the height of the redesigned cup.[8] Here, there is no dispute that Fenwal's redesigned cups fall outside the 75% to 125% height-to-radius ratio required by claim 16, since the redesigned ALYX System vessels alone have a ratio of 131.6%. There is no literal infringement.

**Infringement Under The Doctrine Of Equivalents.** Fenwal has previously shown that "the ALYX System centrifugal units do not satisfy the function-way-result test for equivalence, nor do they satisfy the alternative, 'insubstantial difference' test for equivalence, because the

---

[8] The authorities cited by Haemonetics (Opp. at 11) simply reaffirm the black-letter principles that "the language of the claims . . . dictate[] whether an infringement has occurred," *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002), and that an accused product infringes if it contains "each limitation" of the claim at issue, *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005). For example, the court in *JVW Enterprises, Inc. v. Interact Accessories, Inc.* found infringement because the asserted claim—unlike the apparatus claim at issue here—was a means-plus-*function* claim and the accused device "perform[ed] the identical claimed *function*" recited by the patent. 424 F.3d 1324, 1333 (Fed. Cir. 2005). Even assuming that the external height of the redesigned cups serves no "function," as Haemonetics argues (Opp. at 11), *JVW* is inapposite here because the language of the '983 patent does not require all aspects of the height to be "functional."

Similarly, the court in *Amstar Corp. v. Envirotech Corp.* held merely that if a device contains *all* of the limitations of a patent claim, adding an *additional* element to the accused device will not avoid infringement. 730 F.2d 1476, 1480 (Fed. Cir. 1984). *Vulcan Engineering Co. v. Fata Aluminum, Inc.* stands for that same principle, as the very excerpt quoted by Haemonetics shows (Opp. at 10). 278 F.3d 1366, 1375-76 (Fed. Cir. 2002). In *Vulcan*, the defendant tried to avoid infringement by arguing that its product "ha[d] features in addition to those shown in the '787 patent." *Id.* at 1375. The Federal Circuit rejected the argument, noting that "when all of the claimed features are present in the accused system, the use of additional features does not avoid infringement." *Id.* at 1376.

radius and height of the ALYX System's centrifugal units are substantially in excess of those required by claim 16." (Mem. at 12 n.9, citations omitted.) By not offering any equivalence contentions in its September 9, 2010, infringement contentions (2009 D.I. 59), and choosing to offer no response to this argument (Opp. at 12), Haemonetics has conceded that Fenwal's redesigned ALYX System cups are not equivalents, so summary judgment of noninfringement is appropriate.[9]

Fenwal further showed, as a legal matter, that Haemonetics may not resort to the doctrine of equivalents with respect to the height-to-radius ratio limitations, because those limitations were narrowed during prosecution for reasons related to patentability. (Mem. at 11-18.) On that purely legal question, Haemonetics offers no persuasive reason for avoiding summary judgment. Haemonetics does not contend that it could rebut the presumption that its narrowing amendment surrendered its entitlement to claim equivalents. (Mem. at 17-18.) So, the only issue for the Court is the purely legal question of whether there was a narrowing amendment to issued claim 16. As Fenwal showed (Mem. at 15-16), there was.

Haemonetics argues (i) that the amendments only affected the "radius" limitation, and not the "height-to-radius" limitation, and (ii) that the amendments actually *broadened* the height-to-radius limitation, so that there was no estopping narrowing amendment to the height-to-radius limitation. Both assertions are wrong as a matter of law.

---

[9] Haemonetics does assert, but without explanation or authority, that a genuine issue of material fact exists as to "whether the [redesigned ALYX System vessels] are equivalent to the Original ALYX Cups." (Opp. at 12.) This argument is doubly flawed as a matter of law. *First*, infringement under the doctrine of equivalents requires a comparison of the accused device to the limitations of claim 16, not to a previous product. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) ("[A] product . . . that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the *accused product* . . . and the claimed elements of the *patented invention*."). *Second*, equivalence is determined based on individual limitations set forth in the patent claim, not "the invention as a whole." *Id.* at 29; *see also Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1296 (Fed. Cir. 2009) (en banc) ("[A] generalized showing of equivalency between the claim as a whole and the allegedly infringing product . . . is not sufficient to show infringement."), *cert. denied sub nom. Astellas Pharma, Inc. v. Lupin, Ltd.*, 130 S. Ct. 1052 (2010).

**The "Height-to-Radius" Limitation Is Mathematically Intertwined With The "Radius" Limitation.** Fenwal showed (Mem. at 15-16 & n.13) that the amendments to issued claim 16 narrowed the scope of the height-to-radius requirement. Haemonetics states (Opp. at 14) that because only the radius dimensions were altered by amendment, there was no narrowing amendment to the height-to-radius dimensions, and therefore no estoppel. That is wrong as a matter of simple mathematics. A "height-to-radius ratio" is entirely dependent upon the size of the radius, as Fenwal showed (Mem. at 15-16 n.13).

Haemonetics contends that Rochat's amendment to originally-filed claim 36 (issued claim 16) actually *broadened* the claim because the originally-filed claim "fixe[d] a specific height percentage," whereas issued claim 16 "recites a range of possible height percentages." (Opp. at 14.) But this argument ignores the originally-filed claim's repeated use of the term "approximately," which was deleted in the amendment process (Mem. at 15-16), and a simple example shows that the amendment, in fact, narrowed the range of heights covered by the patent.

Originally-filed claim 36 recited a "centrifugal unit having a radius that is smaller than approximately 50 mm and a height that is approximately 75% greater than the radius." (SOF ¶ 3.) Based on the range of radii recited, originally-filed claim 36 covered centrifugal units with heights ranging between 0 mm[10] and "approximately" 87.5 mm.[11] As amended, issued claim 16 recites a centrifugal unit "having a radius between 25 and 50 mm and a height between 75 and 125% of the radius." (SOF ¶ 5.) Haemonetics does not dispute that this amendment narrowed the range of radii. (*See* Opp. at 12.) Because the height covered by the claim is directly tied to the radius, this amendment narrowed the range of heights, too. With a range of radii between 25

---

[10] (0 mm radius) x 175% = 0 mm height.

[11] (50 mm radius) x 175% = 87.5 mm height.

-11-

and 50 mm, issued claim 16 covers heights between 18.75 mm[12] and 62.5 mm.[13]  The amendment thus reduced the range of possible heights from 87.5 mm in originally-filed claim 36,[14] to 43.75 mm in issued claim 16.[15]  As the table below illustrates, the amendment was plainly narrowing.

| Claim | Minimum Radius | Maximum Radius | Minimum Height | Maximum Height | Height Range |
|---|---|---|---|---|---|
| **Originally-filed claim 36**: "a radius that is smaller than approximately 50 mm and a height that is approximately 75% greater than the radius" | 0 mm | ~ 50 mm | 0 mm | ~ 87.5 mm | **87.5 mm** |
| **Issued claim 16**: "a radius between 25 and 50 mm and a height between 75 and 125% of the radius" | 25 mm | 50 mm | 18.75 mm | 62.5 mm | **43.75 mm** |

The estoppel cases cited by Haemonetics (Opp. at 12-13) mostly involve the unexceptional situation where only one limitation of a claim was amended and not another, so estoppel clearly did not apply to the distinct, unamended limitations.[16]  Here, by contrast, as the

---

[12] (25 mm radius) x 75% = 18.75 mm height.

[13] (50 mm radius) x 125% = 62.5 mm height.

[14] (87.5 mm maximum height) - (0 mm minimum height) = 87.5 mm.

[15] (62.5 mm maximum height) - (18.75 minimum height) = 43.75 mm.

[16] *See Warner Mfg. Co. v. Armstrong*, No. 05-CV-0612, 2007 U.S. Dist. LEXIS 86886, at *13 (D. Minn. Nov. 15, 2007) ("Armstrong narrowed the capturing-bracket limitation to gain allowance; he did not amend in any way, let alone narrow, the resiliently-lined-yoke limitation. Accordingly, Armstrong is free, as a legal matter, to argue that Warner's stilts infringe claim 1 of the '515 patent because the stilts meet the resiliently-lined-yoke limitation under the doctrine of equivalents."); *ACLARA Biosciences, Inc. v. Caliper Techs. Corp.*, 125 F. Supp. 2d 391, 401 (N.D. Cal. 2000) (holding that a narrowing amendment to a "non-insulation component" of a claim barred assertion of equivalents, but that the patentee could assert equivalents as to an unamended "electrode configuration component" of a claim).  The other cases cited by Haemonetics include a run-of-the-mill equivalents case where prosecution-history estoppel was not even at issue, *Amesbury Group, Inc. v. Caldwell Mfg. Co.*, No. 05-10020-DPW, 2006 U.S. Dist. LEXIS 80286, at *51 (D. Mass. Nov. 2, 2006), and a case in which the patentee rebutted the *Festo* presumption of estoppel, something that Haemonetics has made no effort to do here.  *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1370 (Fed. Cir. 2004) ("the amendment limiting the literal scope of claim 1 to a single cup process bears 'only a tangential relation,' if that, 'to the equivalent in question,' a process using multiple cups").

table above shows, *both* the radius and height limitations were amended and narrowed.

### The Examiner Never Would Have Allowed A Height-To-Radius Ratio Of 131.6%.

Haemonetics does not seriously contest that Rochat's amendments to issued claim 16 were for "a substantial reason related to patentability." *Warner-Jenkinson*, 520 U.S. at 33; *see* Mem. at 15-16. Rochat amended both claims in direct response to the Examiner's rejection for failure to satisfy the written-description requirement of 35 U.S.C. § 112, ¶ 1. (SOF ¶¶ 6-7.) Haemonetics nevertheless asserts that Rochat did not surrender the 131.6% ratio, because the Examiner determined only that "the specification did not support claims directed to heights *greater than 175%* of the radius." (Opp. at 15) (emphasis altered). That is flatly wrong. The Examiner made clear that the maximum ratio supported by the specification was 125%: "The specification does *not* support the radius and height ranges set forth in claims 36 and 40. *The only radius and height ranges which are considered supported appear in claim 1 as originally filed*." (SOF ¶ 4.) That "claim 1 as originally filed" recited the very same limitation that Rochat eventually adopted for issued claim 16: "a radius between 25 and 50 mm and *a height between 75 and **125%** of the radius*." ('983 patent, col. 9, lines 59-61.) There is thus no doubt that the Examiner *never* would have allowed a height-to-radius ratio range with an upper boundary greater than 125%, including 131.6% or beyond.[17]

---

[17] *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed. Cir. 1995), does not help Haemonetics. In *Pall*, the district court found that a nylon membrane (called "nylon 46"), which had a 4:1 ratio of methylene $CH_2$ to amide NCHO, infringed under the doctrine of equivalents a patent claiming membranes with ratios of "about 5:1 to about 7:1." *Id.* at 1217. The infringer based its entire prosecution-history estoppel argument on one statement by the patentee that the 5:1 to 7:1 range was "actually rather narrow." *Id.* at 1219. Critically, the claims were never amended. *Id.* The Federal Circuit affirmed the refusal to apply estoppel. Among other things, the court noted that nylon 46 was "not commercially available" at the time of invention. *Id.* at 1220. Therefore, there was no basis for concluding that the patentee could have surrendered patent protection as to the range covered by that product. *Id.*

## **CONCLUSION**

For the reasons set forth above, and in Fenwal's earlier Memorandum, this Court should grant Fenwal's motion for summary judgment and dismiss Haemonetics' complaints in both the 2005 and 2009 actions.

Dated:  January 26, 2011                                         Respectfully submitted,

/s/ Timothy D. Johnston
Daniel J. Gleason (BBO # 194900)
Timothy D. Johnston (BBO # 647894)
Heather B. Repicky (BBO # 663347)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000

-and-

John J. Normile (admitted *pro hac vice*)
Jones Day
222 East 41st Street
New York, NY 10017
(212) 326-3939

Gregory A. Castanias (admitted *pro hac vice*)
Jones Day
51 Louisiana Avenue N.W.
Washington, D.C. 20001
(202) 879-3939

*Attorneys for Fenwal, Inc.*

## **CERTIFICATE OF SERVICE**

     I certify that, on January 26, 2011, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                    /s/ Timothy D. Johnston

1985820.1