United States District Court
District of Massachusetts

| | ) | |
|---|---|---|
| HAEMONETICS CORP., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Nos. |
| | ) | 05-12572-NMG |
| FENWAL, INC., | ) | 09-12107-NMG |
| Defendant. | ) | |
| | ) | |

MEMORANDUM & ORDER

GORTON, J.

These two related cases arise from a patent dispute between Haemonetics Corp. ("Haemonetics") and Fenwal, Inc. ("Fenwal") concerning a red blood cell ("RBC") separation device. Pending before the Court are the defendant's motion for attorney fees, costs and expenses and the plaintiff's motion to disallow certain items in the defendant's Bill of Costs. Because this dispute stretches back over five years and encompasses two separate cases, some relevant background is included.

I. **Factual Background**

   A. **The '05 Case**

In December, 2005, Haemonetics, a manufacturer of instruments used to collect and separate blood samples, filed suit against Baxter Healthcare Corp. ("the '05 Case"), alleging that Baxter's ALYX Component Collection System infringed U.S. Patent No. 6,705,983 ("the '983 Patent"), which Haemonetics owns

-1-

by assignment. Haemonetics later added Fenwal as a defendant. The '983 Patent relates to a centrifuge device which separates and collects RBCs from a donor's drawn blood before returning the remaining components to the donor, thus yielding up to double the volume of RBCs from a single donation as compared to manual collection. The device consists of two parts: a vessel in which the blood separation takes place ("the Vessel") and tubing which carries blood in and out of the vessel ("the Tubes").

In July, 2007, the Court presided over a Markman hearing at which the parties disputed the proper construction of certain claim terms, including "centrifugal unit" in Claim 16. The parties agreed that "a centrifugal unit comprising a centrifugal component and a plurality of tubes" referred to both the Vessel and the Tubes but they disagreed as to the meaning of subsequent references to "centrifugal unit" in the same claim. In August, 2007, the Court issued a claim construction order in which it concluded that the disputed "centrifugal unit" referred to the Vessel only.

The case then proceeded to a jury trial. The Court allowed Haemonetics' motion for Judgment as a Matter of Law ("JMOL") that Claim 16 was not indefinite. The jury subsequently returned a verdict for Haemonetics and awarded damages of over $18 million in lost profits and royalties.

In August, 2009, Fenwal appealed to the Federal Circuit,

-2-

arguing that this Court erred in its construction of "centrifugal unit" on Claim 16 and in entering JMOL that Claim 16 was not indefinite. In June, 2010, the Federal Circuit concluded, contrary to this Court's construction, that "centrifugal unit" in Claim 16 "consistently means a vessel and a plurality of tubes." Haemonetics Corp. v. Baxter Healthcare Corp., 607 F.3d 776, 783 (Fed. Cir. 2010). The Federal Circuit vacated the JMOL and the jury verdict and remanded for further proceedings, including a determination of the meaning of "radius" and "height" under the amended claim construction of "centrifugal unit" and of whether Claim 16 is definite. Haemonetics' petition for rehearing en banc was denied in August, 2010.

### B. The '09 Case

While its appeal in the '05 case was pending and in light of the injunction entered, Fenwal designed a new version of its product that it believed avoided infringement of the '983 Patent. In December, 2009, Haemonetics commenced a new action against Fenwal ("the '09 Case") seeking a declaration that Fenwal's redesigned separation cup continued to infringe the '983 Patent.

### C. Post-Appeal Litigation

In September, 2010, following the remand of the '05 Case, Haemonetics filed its infringement contentions, identifying an alternate "plurality of tubes" located within the Vessel itself. Haemonetics also moved for a status conference. The Court denied

-3-

the motion, <u>inter</u> <u>alia</u>, because the parties had a stipulated and shared understanding of the construction of "plurality of tubes" as "two or more conduits that transport liquid materials (e.g. blood and blood components) into and out of the vessel." The Court further noted that the doctrine of judicial estoppel prevented Haemonetics from asserting a different construction of "plurality of tubes."

In November, 2010, Fenwal moved for summary judgment in both the '05 Case and '09 Case, contending that 1) neither its original nor redesigned products infringe Claim 16 of the '983 Patent either literally or under the doctrine of equivalents and 2) Claim 16 is invalid for indefiniteness. In its opposition, Haemonetics argued that the Vessel tubing satisfied the stipulated claim construction of a "plurality of tubes."

The Court allowed Fenwal's motion and rejected Haemonetics's argument on three grounds:

1) the stipulated construction of "plurality of tubes" limited the term to conduits transporting liquid "into and out of" the Vessel;

2) the Federal Circuit's construction of the "centrifugal unit" as two parts (the Vessel and a "plurality of tubes") prevented "plurality of tubes" from being an internal component of the Vessel; and

3) Haemonetics was judicially estopped from altering the construction of "plurality of tubes."

In September, 2011, Fenwal moved for an award of attorney fees, costs and expenses under both 35 U.S.C. §285 and 28 U.S.C.

-4-

§ 1927. Fenwal submitted a Bill of Costs in October, 2011. Haemonetics opposes Fenwal's motion and has filed motion to disallow certain items listed in the Bill of Costs, albeit an untimely motion.

## II. Legal Analysis

### A. Legal Standard

Federal district courts are authorized by statute to award attorneys' fees in patent cases in two circumstances.

First, reasonable attorneys' fees may be awarded to the prevailing party in patent litigation in "exceptional cases." 35 U.S.C. § 285. Before it may consider whether the requested amount is appropriate, the Court must first determine whether the case qualifies as exceptional under § 285. Phonometrics, Inc. v. Westin Hotel Co., 350 F.3d 1242, 1245 (Fed. Cir. 2003). A party may show that a case is exceptional by proving that its opponent engaged in vexatious, unjustified and otherwise bad faith litigation. Id. at 1246. Doing so requires clear and convincing evidence that "(1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1377 (Fed. Cir. 2011).

In addition, Section 1927 of Title 28 of the United States Code authorizes a court to impose reasonable "costs, expenses, and attorneys' fees" against an attorney who "multiplies the proceeding in any case unreasonably and vexatiously." To warrant

-5-

sanction under § 1927, an attorney's conduct must:

> evince a studied disregard of the need for an orderly judicial process, or add up to a reckless breach of the lawyer's obligations as an officer of the court.

Jensen v. Phillips Screw Co., 546 F.3d 59, 64 (1st Cir. 2008) (internal citations omitted).

Costs other than attorneys' fees are allowed to the prevailing party in civil litigation. Fed. R. Civ. P. 54(d). The Court taxes costs at its discretion within the scope authorized by 28 U.S.C. § 1920. Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987).

### B. Application

#### 1. Fenwal's Motion for an Award of Attorneys' Fees

Fenwal asserts that the post-appeal conduct of Haemonetics merits an award of attorneys' fees under both §§ 285 and 1927. Fenwal's argument is predicated on its conviction that Haemonetics's "Vessel tubing" infringement contention was foreclosed by decisions of the Federal Circuit and this Court. As such, Fenwal asserts that Haemonetics's arguments were objectively unreasonable, vexatious and dilatory. Fenwal accuses Haemonetics of acting in bad faith by intentionally prolonging the proceedings to promote market uncertainty and speculation that Fenwal would be prevented from selling its products. Fenwal supports the latter allegation with second-hand reports by its own officers and customers, including the two-year-old deposition

-6-

of one of its executives.

### a. Attorneys' Fees Under 35 U.S.C. § 285

Fenwal has not established by clear and convincing evidence that Haemonetics's post-appeal litigation constitutes an exceptional case, was objectively baseless or was brought in bad faith.

Prior to this Court's summary judgment order, neither the Federal Circuit nor this Court had ruled that a "plurality of tubes" could not include the Vessel tubing. The issue was not before the Federal Circuit. The closest this Court came to such a ruling was its conclusion that Haemonetics was judicially estopped from revisiting the meaning of "plurality of tubes." Haemonetics was free to apply the stipulated construction in its opposition to summary judgment and it did so under the guidance of expert opinion. The Court's ultimate rejection of that application does not mean that Haemonetics's claim was objectively baseless.

Fenwal's contention that Haemonetics acted in bad faith fails by the same token. See Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1384 (Fed. Cir. 2005) ("[A] patentee's ultimately incorrect view of how a court will find does not of itself establish bad faith."). The Court presumes that "an assertion of infringement of a duly granted patent is made in good faith," Medtronic Navigation, Inc. v. BrainLAB

-7-

Medizinische Computersysteme GmbH, 603 F.3d 943, 954 (Fed. Cir. 2010), and Fenwal's unsupported allegations of nefarious litigation practices are hardly sufficient to rebut that presumption.

As Fenwal's arguments for objective baselessness and bad faith fail, it cannot establish that this is an exceptional case. An award of attorney fees is thus not authorized under § 285.

### b. Sanctions Pursuant to 28 U.S.C. § 1279

For the same reasons, Fenwal's argument fails with respect to § 1279 sanctions. No evidence indicates that Haemonetics proceeded with a studied disregard for the judicial process or in a bad faith effort to multiply proceedings. Section 1279 punishes abuse, not "garden-variety carelessness or even incompetence." Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 245 (1st Cir. 2010). More than unaccepted argument is required to warrant sanction under the statute.

### 2. Haemonetics's Motion to Disallow Costs

Haemonetics moves to disallow various items in Fenwal's Bill of Costs as not taxable under 28 U.S.C. § 1920 or the guidelines the District of Massachusetts has promulgated for the taxation of costs.[1] See Taxation of Costs (2000), available at

---

[1] Both parties' calculations include errors, redundancies and inconsistencies. The figures used here are gathered from Fenwal's exhibits supporting its Bill of Costs.

-8-

http://www.mad.uscourts.gov/resources/pdf/taxation.pdf ("Taxation of Costs"). Haemonetics's motion is untimely but its arguments are well-taken and its untimeliness will be excused under these circumstances. Accordingly, $53,464.96 of the $70,365.20 claimed in Fenwal's Bill of Costs will be disallowed.

### a. Exemplification Costs

Fenwal seeks to tax $29,653.57 in expenses for computer-generated graphics it used at trial. Exemplification fees may be taxed under 28 U.S.C. § 1920(4) if they are "necessary as opposed to merely convenient or helpful" for use in a party's case. Martinez v. Cui, Civil Action No. 06-40029-FDS, 2009 WL 3298080, at *4 (D. Mass. Apr. 13, 2009). Fenwal's graphics are substantially the same (and were even developed by the same company) as the graphics the Federal Circuit described as merely helpful "to explain the case to the jury and the court" rather than necessary for trial. Summit Tech., Inc. v. Nidek Co., 435 F.3d 1371, 1377 (Fed. Cir. 2006). Fenwal does not explain why these graphics were necessary for its case, and, having reviewed them, the Court is convinced that they were not. The $29,653.57 attributed to these graphics will be disallowed.

### b. Deposition Costs

Fenwal seeks $11,164.96 for deposition transcripts it did not use at trial. Although taxation of the cost of deposition transcripts is permitted under § 1920(2), "[a]bsent special

-9-

circumstances, only those depositions actually introduced in evidence or used at trial may be taxed as costs." <u>Neles-Jamesbury, Inc.</u> v. <u>Fisher Controls Int'l, Inc.</u>, 140 F. Supp. 2d 104, 106 (D. Mass. 2001) (internal citations and quotation marks omitted).

Two of the deposition transcripts Fenwal seeks to tax (those of Jean-Denis Rochat and Gary Stacey) were entered into evidence at trial. The remaining twelve depositions were used to prepare for trial or cited in legal memoranda. These uses are not sufficient to permit taxation. <u>See</u> <u>Walters</u> v. <u>President & Fellows of Harvard Coll.</u>, 692 F. Supp. 1440, 1443 (D. Mass. 1988) (taxation denied for transcripts merely "necessary to the thorough preparation" of a case); <u>Gochis</u> v. <u>Allstate Ins. Co.</u>, 162 F.R.D. 248, 252 (D. Mass. 1995) ("[C]itation in a brief does not automatically entitle the prevailing party to costs."). The taxation will, therefore, be allowed with respect to the transcripts of the Rochat and Stacey depositions but otherwise denied.

Furthermore, Fenwal included the cost of an extra copy of the Stacey transcript in its Bill of Costs despite asserting elsewhere that it would only seek to tax the cost of the original. In keeping with that representation, the extra $432.68 included in the Bill of Costs will be disallowed.

### c. Expedited Transcript Costs

Fenwal seeks to tax $4,196.75 for expedited, daily and rough transcripts of the January 8, 2009 pretrial conference, the Rochat deposition and trial proceedings. The cost of producing a daily or expedited transcript is not taxable "unless requested in a motion filed prior to commencement of trial." Taxation of Costs, 4. Fenwal did not file such a motion with the Court. The costs for these expedited transcripts will thus be disallowed.

### d. Witness Fees and Costs

Section 1920(3) permits witness expenses to be taxed within the limits set forth in 28 U.S.C. § 1821. See Crawford Fitting Co., at 441-42. Many of Fenwal's claimed expenses for travel and other fees fall outside the scope of taxable expenses as provided by that statute.

Witnesses traveling by common carrier may be reimbursed for actual costs of:

> transportation reasonably utilized and the distance necessarily traveled . . . by the shortest practical route in going to and returning from the place of attendance.

28 U.S.C. § 1821(c)(1). Fenwal claims seven flights for Robin Felder and three flights for Thomas Westberg to permit each to testify on a single day of trial. Fenwal makes no attempt to justify those costs as reasonable or necessary. In the judgment of this Court, it is appropriate for Fenwal to recover only those travel expenses associated with the days the subject witnesses

-11-

testified. The $2,235 in expenses related to the witnesses' eight other flights will be disallowed.

A witness may receive a $40 stipend for each day he or she attends trial, including "the time necessarily occupied in going to and returning from the place of attendance." 28 U.S.C. § 1821(b). Moreover, a subsistence fee is available to witnesses required to stay overnight to participate in trial. A witness's compensation is not limited solely to days the witness testifies, "but may also be awarded for each day the witness <u>necessarily</u> attends trial [and] time spent during delays and temporary adjournments." <u>Soberay Mach. & Equip. Co.</u> v. <u>MRF Ltd.</u>, 181 F.3d 759, 772 (6th Cir. 1999). Attendance fees for expert witnesses are not to be awarded in excess of "$40 per day of testimony." <u>McLaughlin by McLaughlin</u> v. <u>Boston Sch. Comm.</u>, 976 F. Supp. 53, 69 (D. Mass. 1997); see also <u>Canal Barge Co.</u> v. <u>Commonwealth Edison Co.</u>, No. 98 C 0509, 2003 WL 1908032, at *3 (N.D. Ill. Apr. 18, 2003); <u>Keeton</u> v. <u>Wal-Mart Stores, Inc.</u>, 21 F. Supp. 2d 653, 662 (E.D. Tex. 1998).

Fenwal claims a total of 15 days of witness attendance fees and four days of subsistence fees unrelated to a witness's testimony or travel. The bulk of those fees is associated with expert witnesses attending on additional days to hear the testimony of other witnesses. Fenwal gives no explanation why claims for the remaining days are reasonable or necessary. The

-12-

corresponding $1,552 in fees will be disallowed.

                              **e.    Translated Documents Not Used at Trial**

Fenwal claims $4,230 for translations of a deposition transcript for Serge Hauswirth and documents Haemonetics produced during discovery. Translation costs may be taxed if the documents are "used in evidence, used as part of the proceeding or otherwise reasonably necessary for trial preparation." Taxation of Costs, 5. Fenwal states that these translations were required for discovery and, with respect to the Hauswirth deposition, because Haemonetics identified Hauswirth at one point as a potential witness. Neither explanation establishes why they were necessary. The corresponding $4,230 will be disallowed.

### ORDER

In accordance with the foregoing,

1. the defendant's motions for attorney fees, costs and expenses in the '05 case (Docket No. 381) and the '09 case (Docket No. 80) are **DENIED**; and

2. the plaintiff's motions to disallow certain costs claimed in Fenwal's Bill of Costs in the '05 case (Docket No. 390) and the '09 case (Docket No. 89) are **ALLOWED**, in part, and **DENIED**, in part. The following costs are disallowed:

    a.    $29,653.57 in exemplification fees;

    b.    $11,597.64 for deposition transcripts not used at trial or entered into evidence;

    c.    $4,196.75 for expedited transcript fees not requested prior to trial;

    d. $3,787 for unreasonable witness fees; and

    e. $4,230 for unnecessary translation costs.

After disallowance of the various unauthorized items from the Bill of Costs, Fenwal is entitled to recover $16,900.24 of its costs from Haemonetics.


**So ordered.**

             /s/ Nathaniel M. Gorton
             Nathaniel M. Gorton
             United States District Judge

Dated May 10, 2012